IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 20-03046-12-CR-S-BP |
| | ) | |
| TRENTON J. DAVIS, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Before the Court is Defendant Trenton J. Davis's Motion to Sever his trial from that of his eleven codefendants. (Doc. 202.) The Government has filed Suggestions in Opposition. (Doc. 204.) Davis did not submit a reply brief. For the reasons set forth below, the Motion will be **GRANTED**.

**I.     Background**

On June 10, 2020, a nineteen-count Indictment was returned against twelve defendants with crimes related to the distribution of fentanyl. (Doc. 9.) Davis was charged in Count Nineteen with controlling a place of distribution operations "[b]eginning on an unknown date, but at least as early as April 14, 2020, and continuing to on or about April 20, 2020" in violation of 21 U.S.C. Section 856 (a)(2). *Id.* at 9. Of the twelve defendants in this case, Davis is the only defendant that has not been charged with conspiracy to distribute fentanyl in Count One[1] or with conspiracy to

---

[1] The indictment describes the approximate dates involved in Count One as "beginning on an unknown date, but at least as early January 31, 2019, and continuing to on or about May 18, 2020." *Id.* at 2.

engage in a monetary transaction with proceeds derived from an unlawful activity (the conspiracy to distribute fentanyl) in Count Two.[2] *Id.* at 2-3.

On June 16, 2020, Davis first appeared in the case after his arrest the day before. On June 18, 2020, the Government moved to detain Davis and the following day, he was arraigned. At that time, the case was set on the joint criminal jury docket commencing on August 10, 2020. On June 22, 2020, the Government orally withdrew its motion to detain, and Davis was released on bond subject to conditions of release. On July 8, 2020, the case was continued to the joint criminal docket commencing on January 4, 2021 based on a codefendant's motion for continuance. On December 14, 2020, the case was reset to the joint criminal docket commencing March 22, 2021 pursuant to the December 1, 2020 General Order issued by Chief Judge Beth Phillips.[3] On January 4, 2021, Davis filed the instant motion.

## II. Discussion

In his Motion, Davis argues that (1) the jury will be unable to compartmentalize the evidence as relates to him because "the spillover effect of the evidence against co[]defendants will be highly and unfairly prejudicial"; and (2) the failure to sever will lead to a violation of his Sixth Amendment rights to confront the witnesses against him. (Doc. 202 at 3-4.) The Government responds that Davis has not demonstrated that a jury will be unable to compartmentalize the evidence by a showing of "real prejudice." (Doc. 214 at 3-5.) As to the second argument, the Government contends that Davis has not identified any statement that would violate his Sixth Amendment rights and that the confrontation clause would not be implicated. *Id.* at 5-6.

---

[2] The indictment describes the approximate dates involved in Count Two as "beginning on or about September 6, 2019, and continuing to on or about January 27, 2020." *Id.* at 3.
[3] On March 8, 2021, the case was removed from the March 22, 2021 joint criminal docket given the pending matters in the case.

Rule 8(b) of the Federal Rules of Criminal Procedure establishes the requirements for joinder of offense or defendants in the same indictment. Defendants may be charged together "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." *Id.* Rule 14(a) permits the court to order severance, even though joinder is otherwise proper under Rule 8, "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a).

"The objective of both Rules is to balance the prejudice inherent in joint trials against the interests in judicial economy." *United States v. Jones*, 880 F.2d 55, 60 (8th Cir. 1989). To that end, "[t]here is a preference in the federal system for joint trials of defendants who are indicted together" unless the benefits are outweighed by a clear likelihood of prejudice. *Zafiro v. United States*, 506 U.S. 534, 537 (1993). Joint trials are favored because "[t]rying codefendants together not only conserves scarce time and resources, but also gives the jury the best perspective on all of the evidence and therefore increases the likelihood of a correct outcome." *United States v. Hively*, 437 F.3d 752, 765 (8th Cir. 2006) (internal quotation marks and citation omitted).

Nonetheless, the Court may sever trials "upon a showing of real prejudice to an individual defendant." *United States. v. Sandstrom*, 594 F.3d 634, 644 (8th Cir. 2010); *Zafiro*, 506 U.S. at 539 (stating that severance should be granted "under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence"). A defendant may show real prejudice to his right to a fair trial by demonstrating "(a) his defense is irreconcilable with that of his co[]defendant or (b) the jury will be unable to compartmentalize the evidence as it relates to the separate defendants." *United States v. Mueller*, 661 F.3d 338, 347 (8th Cir. 2011) (alteration and

citation omitted); *see also Hively*, 437 F.3d at 765 (explaining that [p]rejudice can be demonstrated by showing that the jury will be unable to compartmentalize the evidence as it relates to the separate defendants because of a "prejudicial spillover effect."). Severance is not granted "merely because [a defendant] may have a better chance of acquittal in [a] separate trial[]." *Zafiro* 506 U.S. at 539. The defendant carries a heavy burden of showing that severance is mandated. *United States v. Young*, 753 F.3d 757, 777 (8th Cir. 2014). Ultimately, the decision to sever lies within the sound discretion of the district court. *Zafiro*, 506 U.S. at 537; *Young*, 753 F.3d at 778.

Davis argues that the jury will be unable to compartmentalize the evidence as relates to him because of the prejudicial spillover effect. (Doc. 202 at 3.) Davis alleges that all the defendants, except for him, have "serious prior records," "have committed numerous acts in furtherance of a long running drug conspiracy" and "are charged with conspiracy to distribute controlled substances, money laundering related to the distribution of controlled substances, illegal possession of firearms and unlawful transportation of firearms." *Id.* at 1, 3. Davis highlights that he "is twenty years of age with no criminal record," "is accused of permitting lead defendant, James 'Red' Collins, [an elder relative of his family] to store and process his narcotics in his family's home," "the government has no evidence of [his] involvement in the actual distribution of illicit drugs," and he is charged with only one count, which he describes as "making a place he purportedly controlled available for the purpose of unlawfully manufacturing, storing, and distributing a controlled substance" and later as "providing the use of his bedroom closet for the storage of James "Red" Collins' drugs." *Id.* And, while "[t]he [G]overnment will offer a wealth of evidence of the crimes of the other eleven defendants[,]" Davis contends his connection to "the offenses of Red Collins was short-lived and comparatively minimal" such that "the spillover effect of the evidence will be highly prejudicial" and "subvert [] Davis' presumption of [innocence]." *Id.*

The Government argues in response that Davis has not demonstrated that a jury will be unable to compartmentalize the evidence. (Doc. 214 at 3.) Specifically, the Government claims: Davis has not shown "real prejudice"; Davis' argument implicitly concedes that the Government's evidence will show Collins utilized Davis' bedroom in furtherance of the conspiracy; the "serious prior criminal records' of co[]defendants" would not prejudice Davis because "[o]ther crimes" and "bad act evidence" would be accompanied by jury instructions explaining "that the evidence should only be considered against the defendant to whom it pertains"; the "conspiracy charged in Count 1 of the Indictment (approximately one year and four months) is relatively short . . . the issues are not complex, and seven of the nineteen counts are alleged to have occurred during the time frame in which defendant is alleged to have allowed use of the drug distribution activities"; and finally, Davis is not entitled to severance merely because the evidence against a codefendant is more damaging than that against him without a showing of clear prejudice. *Id.* 3-5.

After careful consideration, the Court concludes that the jury will not be able to compartmentalize the evidence against Davis because of the prejudicial spillover effect. In evaluating the jury's ability to compartmentalize the evidence against joint defendants, the Court considers factors such as the expected length and complexity of the trial and whether potential jury instructions could sufficiently resolve any prejudice. *See United States v. Lewis*, 557 F.3d 601, 610 (8th Cir. 2009) ("In assessing the jury's ability to compartmentalize the evidence against joint defendants, we consider the complexity of the case, whether any of the defendants was acquitted, and the adequacy of the jury instructions and admonitions to the jury." (citation omitted)).

In this case, the sole charge against Davis—Count Nineteen—stems from his alleged involvement in controlling a place of distribution operations for approximately six days (April 14, 2020 – April 20, 2020). Most notably, Davis' indictment did not charge him in the overall

conspiracy as did the indictments of his eleven codefendants. Ten codefendants, including Collins (Davis' uncle), were charged in Count One with conspiracy to distribute fentanyl over a period of approximately sixteen months (January 31, 2019 – May 18, 2020) and the remaining codefendant and Collins were charged in Count Two with conspiracy to engage in a monetary transaction with proceeds derived from the conspiracy to distribute fentanyl over a period of approximately four months (September 6, 2019 – January 27, 2020). The general rule is that "persons charged in a conspiracy should be tried together, especially when proof of the charges against the defendants is based upon the same evidence and acts." *United States v. Mueller*, 661 F.3d 338, 347 (8th Cir. 2011). Even in most cases cited by the Government's brief for the proposition that Davis did not demonstrate "real prejudice," the defendants seeking severance in those cases were all charged with conspiracy. *See e.g., Zafiro* 506 U.S. at 536; *United States v. Lewis,* 557 F.3d 601, 610 (8th Cir. 2009); *United States v. Mickelson*, 378 F.3d 810, 814 (8th Cir. 2004); *United States v. Kime*, 99 F.3d 870, 880 (8th Cir. 1996); *United States. v. Pecina*, 956 F.2d 186, 188 (8th Cir. 1992); *United States. v. Willis*, 940 F.2d 1136, 1138 (8th Cir. 1991); *United States. v. McConnell*, 903 F.2d 566, 571 (8th Cir. 1990); *United States v. Robinson*, 774 F.2d 261, 274–75 (8th Cir. 1985). Here, Davis is not charged with conspiracy in either Count One nor Count Two, and instead, charged only with one count for controlling a place of distribution operations, which the Court views as a deliberate choice by the Government.

As to the relevant factors evaluating the length and complexity of the trial, the Government contends that a conspiracy spanning sixteen months is "relatively short" and that the issues are not complex. The Court disagrees, finding that this case with twelve defendants and nineteen counts to be complex and likely to require a lengthy trial. Here, there are two conspiracy charges—Count One spanning a sixteen-month period (of which Davis is not a conspirator) and Count Two

spanning a four-month period (of which again Davis is not a conspirator). Conversely, Davis' sole charge spans six days at the tail end of the Count One conspiracy, and Davis is also not charged in the other sixteen substantive counts over varying time periods, which involve possession with intent to distribute fentanyl, possession of firearms, or engaging in monetary transactions with proceeds from the distribution of fentanyl. Although the Government contends that the period of Davis' charge overlaps with seven substantive counts against codefendants (inclusive of the Count One conspiracy charge), the Court finds that the potential for jury confusion is high given the complexity of this case.

It is also likely that the evidence of the codefendants' wrongdoing would lead a jury to conclude that Davis is guilty by association. *See Zafiro* 506 U.S. at 539 (providing an example of prejudice as when "evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty"). The jury will be unable to compartmentalize the overwhelming evidence introduced on *two* conspiracies involving eleven of the twelve defendants over sixteen months as separate from Davis' alleged involvement as a non-conspiring defendant over six days. *See id.* (explaining that the risk of prejudice is heightened when "many defendants are tried together in a complex case and they have markedly different degrees of culpability" (citations omitted)).

Based on the above, the Court concludes that there is a clear likelihood that if Davis is tried jointly with the codefendants, there is a severe risk of prejudicial spillover effect to Davis. The jury will be unable to compartmentalize the evidence against Davis from the evidence of conspiracy against the codefendants. Moreover, while the disparity of evidence against a particular codefendant or prejudice from association with codefendants with serious criminal records may be reduced with jury instructions, here, given the complexity of the case and the evidence

concerning the conspiracy in which Davis *is not* charged, no limiting instructions would sufficiently handle the heightened risk of prejudice. Further, the Court notes that because of the limited overlap between the charges against Davis and the codefendants, there is little burden on the Government to try Davis' case separately from that of his codefendants. The Government's charge against Davis can easily stand or fall on its own. Based on these findings, the Court need not address the bases of Davis' second argument.

Accordingly, Defendant Davis' Motion to Sever (Doc. 202) is **GRANTED**.

**IT IS SO ORDERED.**

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: March 8, 2021